UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL J. HEBENSTREIT Trustee of the Bankruptcy Estate for Richard N. Bell,<br><br>      Plaintiff,<br><br>      v.<br><br>MERCHANTS BANK OF INDIANA,<br><br>      Defendant.<br><br>Bankruptcy Trustee Michael J Hebenstreit MICHAEL J. HEBENSTREIT, TRUSTEE OF THE BANKRUPTCY ESTATE OF RICHARD N. BELL agent TRUSTEE OF THE BANKRUPTCY ESTATE OF RICHARD N. BELL,<br><br>      Trustee. | No. 1:18-cv-00056-JPH-DLP |

**FINDINGS OF FACT & CONCLUSIONS OF LAW UNDER FEDERAL RULE OF CIVIL PROCEDURE 52**

After granting Richard Bell[1] summary judgment on his copyright infringement claims against Merchants Bank of Indiana, dkt. 98, the Court held a bench trial on damages. The parties have submitted proposed findings of fact and conclusions of law. Dkt. 141; dkt. 142. The Court sets forth its findings of fact and conclusions of law below.

---

[1] Shortly before trial, Michael Hebenstreit was substituted as Plaintiff in this case because of a pending bankruptcy action filed by Mr. Bell. Dkt. 138.

1

# I.
# Findings of Fact

Except where otherwise noted, the following facts are based on testimony from the February 9, 2021 bench trial.

Mr. Bell owns the copyright to the Indianapolis Nighttime Photo ("the Photo"). In 2004, Mr. Bell began selling licenses for use of the Photo, charging a $25 fee for a private individual license and a $200 fee for a commercial license. Mr. Bell has earned a total of $825 from selling licenses for the Photo. Mr. Bell has also received a total of $135,200 for settlements of copyright-violation claims associated with the Photo.

In September 2014, Merchants entered into a written agreement with Sonar Studios ("Sonar") to develop a new website for the bank. Rebecca Marsh, Merchants' Vice President of Marketing & Communications, was the Merchants employee who worked with Sonar on the website project. Only Ms. Marsh and Sonar had access to the website while it was being developed.

Sonar created a content management system ("CMS") which allowed Sonar and Ms. Marsh to add, edit, and remove content from the website. Merchants' contract with Sonar included a $1,000 fee for images and the loading of images onto the website. Sonar provided stock images[2] by uploading digital image files to the CMS's Media Library. Merchants did not direct or request Sonar to provide any specific stock image.

---

[2] Ms. Marsh explained that a stock image is "a collection of photography that someone else has taken . . . [that is] offered up for a fee through a stock photography manager."

The Photo was in the initial set of stock images that Sonar uploaded to the Media Library. It is undisputed that Sonar uploaded the Photo to the Media Library.

Ms. Marsh is familiar with the custom and practice of website developers, and has been involved in the development of approximately ten websites. She selected Sonar for the project based on her past experience working with them.

Ms. Marsh testified that it is industry custom for website developers, such as Sonar, to upload stock images that they either own, have a license to use, or otherwise have permission to use. It was Ms. Marsh's understanding that, as part of their contract pricing, Sonar would purchase any required licensing for the stock images it supplied. Ms. Marsh's expectation therefore was that Sonar had permission to use any image it uploaded.

Sonar supplied Ms. Marsh drafts of webpages containing images pulled from the Media Library, all of which had watermarks.[3] None of the images in the Media Library contained watermarks after the website went live. This signified to Ms. Marsh that Sonar had obtained licenses for the photos in the Media Library.

In March 2017, Ms. Marsh created a blog post to recruit potential employees. To make the post more attractive, Ms. Marsh selected the Photo from the CMS's Media Library. Merchants included its standard copyright language at the bottom of the webpage: "Copyright 2017 Merchants Bank. All

---

[3] As Ms. Marsh explained, a watermark is "a transparent image . . . that lays over the top of the image so that it is very recognizable that the image is not available for public use [ ] [a]nd not licensed."

3

Rights Reserved." Merchants included this language on every webpage on the website. No copyright language appeared on the Photo. *See* dkt. 23-2.

On December 15, 2017, Ms. Marsh received an email from Mr. Bell stating that Merchants was not authorized to use the Photo and demanding that Merchants immediately take down the Photo and pay him $5,000. *See* Defendant Exhibit 204. It is undisputed that the sole reason for Mr. Bell's demand was that he saw the Photo on Merchants' website. As soon as Ms. Marsh read the email, she immediately removed the Photo and deleted it from the Media Library.

Less than one month later, Mr. Bell filed a lawsuit for copyright infringement against Merchants without checking to see if Merchants took down the Photo. Dkt. 1. On August 11, 2017, before conducting any discovery, Mr. Bell filed a motion for summary judgment seeking damages of $150,000. Dkt. 56. In his deposition, Mr. Bell admitted that he increased his damages from $5,000 to $150,000 because of Merchant's "obstinance."

Mr. Bell amended his complaint to add Sonar as a defendant. In November 2019, Mr. Bell settled with Sonar, which paid him $2,000 for a release and dismissal with prejudice from the action. *See* dkt. 92; dkt. 93.

On April 27, 2020, this Court granted Mr. Bell summary judgment on the issue of copyright infringement and granted Merchants summary judgment as to willfulness. Dkt. 98.

## II.
## Conclusions of Law

### A. Statutory Damages

A "copyright owner may elect . . . to recover, instead of actual damages and profits, an award of statutory damages . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Mr. Bell elected to recover statutory damages. Dkt. 111 at 2.

The Court has broad discretion to assess damages within the statutory limits. *See F.E.L. Publ'ns, Ltd. v. Catholic Bishop of Chi.*, 754 F.2d 216, 219 (7th Cir. 1985). In exercising this discretion, the Court considers several factors including: "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bell v. DiamondIndyLimo.com*, No. 1:13–cv–00035, 2014 WL 2747578, at *1 (S.D. Ind. June 17, 2014) (citing *Bryant v. Media Right Prods.*, Inc., 603 F.3d 135, 144 (2d Cir. 2010)). Statutory damages thus "serve a dual purpose" of compensating a plaintiff for actual damages that are not easily ascertainable and deterring future copyright infringement. *Malibu Media, LLC v. Julien*, No. 1:12-cv-1730-TWP-MJD, 2013 WL 5274262, at *2 (S.D. Ind. Sept. 17, 2013) (citations omitted).

With respect to Merchants' state of mind, there is no evidence that Merchants intended to infringe on Mr. Bell's copyright. Sonar uploaded the Photo to the Media Library and Ms. Marsh testified that she would have used one of Merchants' stock images or purchased a similar image if she had known that Mr. Bell owned the Photo. Ms. Marsh relied on Sonar to properly license the photos that it uploaded to the Media Library.

Mr. Bell argues that Merchants acted objectively reckless by failing to confirm that the Photo was not copyright protected and by including its copyright notice under the Photo. However, the record demonstrates that Ms. Marsh was not aware and had no reason to believe that her actions constituted infringement. There was no copyright watermark on the Photo and Ms. Marsh had a credible, good faith belief—based on her experience with Sonar and working with other website developers—that Sonar had the right to use images that it put in the Media Library. And although Merchants included copyright language on the website, it appeared on the bottom of every webpage, never on the Photo. Considered in context, Merchants' use of the copyright language conveyed Merchants' asserted copyright over the content of the website rather than the Photo. Regardless, as discussed below, the record demonstrates that the infringement was innocent and Merchants' use of the copyright claim on its website does not support a finding of objective recklessness.

Merchants did not save considerable expenses or earn any profits from its use of the Photo. Ms. Marsh testified that Merchants did not sell or profit from the Photo. She also testified that the purpose of the blog post was to

6

attract employees, not to generate profit or attract new business.  Finally, Ms. Marsh testified that she could have used a free stock image or purchased a similar image for between $2–5.  Had Merchants paid Mr. Bell his going rate for the Photo, it would have cost $200.  Merchants thus saved, at most, $200 by using the Photo.

Mr. Bell lost minimal, if any, revenue from Merchants' infringement.  Mr. Bell admitted that, at most, $200 is "all [he] ha[s] lost in this case," because that is what Merchants could have paid to use the Photo.  And if Merchants would have chosen to use a different photo, as Ms. Marsh testified, then Mr. Bell lost no revenue.

The need to deter future copyright infringement does not weigh in Mr. Bell's favor.  The record demonstrates that Merchants was not aware and had no reason to believe that its acts constituted copyright infringement.  Thus, the need for deterrence here is minimal.[4]

Regarding the conduct and attitude of the parties, Mr. Bell admitted that the only reason he increased his damages demand from $5,000 to $150,000 because of Merchants' "obstinance."  He also admitted that he increased his damages demand even though the facts as he understood them had not changed since he filed his initial claim.

---

[4] In reaching its decision, the Court gives minimal weight to Plaintiff's Exhibit 005 (Order & Final Judgment in *Bell v. Texas Haus Investments, LLC*).  That case involved different facts and Plaintiff's claim that Merchants "knew [it] had not obtained the rights to publish the photo" is not supported by the record.  In sum, *Texas Haus* does not compel or counsel in favor of the result urged by Plaintiff.

7

Here, having weighed the evidence and considered the relevant factors, the Court concludes that minimal statutory damages would adequately compensate Mr. Bell.

### B. Innocent Infringement

The Court may, in its discretion, reduce statutory damages to a minimum of $200 if "the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright."  17 U.S.C. § 504(c)(2).

Merchants contends that it was neither aware that Mr. Bell held the copyright for the Photo nor had any reason to believe that its use on Merchants' website constituted copyright infringement.  Dkt. 141 at 11; dkt. 110 at 3.  Mr. Bell argues that Merchants' conduct was "objectively reckless," and that Merchants failed to meet its burden of showing that it was an innocent infringer.  Dkt. 142 at 4–6.

Ms. Marsh testified that Merchants relied on Sonar to have permission to use the photos that it uploaded to the website for Merchants' use; she has been involved in the development of about ten websites, including one with Sonar; it is industry standard for website developers like Sonar to have a license or otherwise have permission to use images that they present to a client for use on a website; during the development stage, all photos in the Media Library had watermarks; when the website went live, none of the photos in the Media

Library had watermarks; and her expectation was that Sonar was authorized to use all images selected for the website.

The Court concludes that Merchants did not know or have reason to know that the Photo was copyright protected. Therefore, the Court concludes that Merchants was an innocent infringer and reduces the damages to $200, the statutory minimum.

### C. Sonar's Settlement

"It is generally agreed that when a plaintiff settles with one of several joint tortfeasors, the nonsettling defendants are entitled to a credit for that settlement." *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 208 (1994). Plaintiff agrees that Merchants is entitled to a credit of $2,000 because of the settlement amount between Mr. Bell and Sonar. Dkt. 142 at 8 ("Merchant's is entitled to a credit of $2,000 for the amount Sonar paid to Bell because of their settlement."); *see* dkt. 141 at 11–12. Because the Court has limited Plaintiff's statutory damages to $200, Plaintiff is not entitled to recover any additional damages from Merchants.

### III.
### Conclusion

The Court requests that the magistrate judge confer with the parties to determine whether, considering the Court's findings of fact and conclusions of law, the parties can resolve Plaintiff's request for reasonable attorneys' fees. If they are not able to do so, the magistrate judge is asked to set a briefing schedule. Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 8/26/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Magistrate Judge Doris L. Pryor

Richard N. Bell
BELL LAW FIRM
richbell@comcast.net

Michael Joseph Hebenstreit
LEWIS & KAPPES PC
mhebenstreit@lewis-kappes.com

Maura K. Kennedy
THE LAW OFFICE OF MAURA K. KENNEDY, LLC
attorneymaurakennedy@gmail.com

David W. Patton
DINSMORE & SHOHL LLP (Indianapolis)
David.Patton@dinsmore.com

John D. Waller
WOODEN & MCLAUGHLIN LLP (Indianapolis)
john.waller@woodenlawyers.com